IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN ROLL FORM CORP., | ) | CASE NO. 1:14 CV 2321 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| THE CHAMBERLAIN GROUP, INC., | ) | |
| AND THE DUCHOSSOIS GROUP, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion to Dismiss filed by Defendants, The Chamberlain Group, Inc. and the Duchossois Group. (Docket #7.) Defendants move the Court to dismiss the Complaint filed by Plaintiff, American Roll Form Corp., for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and, with regard to Defendant Duchossois, for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). The facts, as alleged in the Complaint and considered for purposes of Defendants' Motion to Dismiss, are as follows.

American Roll is a fabricator of engineered steel parts for commercial and consumer products. (Complaint at Paragraph 7.) Defendant Chamberlain is in the business of manufacturing and selling residential and commercial door operators, and gate operators. (Id. at Paragraph 8.) Defendant Duchossois is a parent company to Chamberlain. (Id. at Paragraph 3.)

American Roll alleges that in mid-2009, Chamberlain contacted it and requested assistance in designing and developing a new garage door lift linkage to replace what Chamberlain had previously used for its products. (Complaint at Paragraph 10.) American Roll alleges that Chamberlain represented that it wanted to partner with American Roll as a supplier to reduce costs. (Id. at Paragraph 11.) American Roll alleges that throughout 2010 and 2011, at Chamberlain's request, it designed, developed and tested new designs for the straight and curved arm parts for the garage door lift linkage at its sole expense, delivering all of the details regarding part design; test parts; and, the results of the engineering testing to Chamberlain on a regular basis. (Id. at Paragraph 12-14.)

After the parts were developed by American Roll, Chamberlain ordered the straight arm portion of the tooling, and indicated the designed curved arm would be ordered later. (Complaint at Paragraph 16.) American Roll designed the equipment to produce the part and purchased the equipment and necessary tools at its own expense. (Id. at Paragraphs 18-20.) During the entire process, American Roll shared technical information with Chamberlain, including but not limited to the manufacturing process; the type and strength of the steel; and, the type of tooling being used. Chamberlain asked to visit American Roll on many occasions and brought engineers to the manufacturing facility who observed the manufacturing process; gathered details for running the part; took pictures; and, asked many questions. (Id. at Paragraphs 20-21.) American Roll alleges that it regarded Chamberlain as a trusted partner and, as a result, disclosed to Chamberlain all intellectual proprietary and confidential information, as well as best practices and know-how pertaining to the design and manufacture process. (Id. at Paragraph 24.)

American Roll made its first shipment of straight arms to Chamberlain in February 2011

and continued to make shipments until February 2012. (Id. at Paragraph 25.) In December 2011, Chamberlain asked American Roll to visit its Mexico manufacturing facility, at which time the purchasing manager for Chamberlain informed American Roll that it had reengineered and redesigned the straight arm and was making tools to produce the part in-house. (Id. at Paragraph 26.) American Roll states that this was a surprise and that American Roll had material in stock, as was required per its agreements with Chamberlain, and that it held 14 to 15 truckloads of materials at its supply location. (Id. at Paragraph 27.) Several months later, Chamberlain provided a print of the new straight arm part, which American Roll asserts was a 100% copy of the American Roll designed straight arm part. (Id. at Paragraph 30.)

In early 2013, the President of American Roll, Rob Touzalin, met with Chamberlain's Director of Sourcing, Tim Mischiara. American Roll alleges that Mr. Mischiara indicated he did not believe American Roll had been treated fairly by Chamberlain and represented that American Roll would supply parts to Chamberlain in the future. (Id. at Paragraphs 33-34.) In September 2013, American Roll was invited by Chamberlain to a Supplier Summit in Chicago and, shortly thereafter, received a purchase order to make 10,000 test run pieces for pre-production part approval by Chamberlain. (Id. at Paragraph 35.) The part was approved by Chamberlain for regular production. (Id. at Paragraph 36.)

American Roll alleges that, in reliance upon the representations made by Chamberlain, it relocated its special metal roll forming mill, used for production of the American Roll designed straight arm, to Las Vegas, at considerable expense and in reliance upon Chamberlain's representations that American Roll would receive additional production orders for the American Roll designed straight arm part. (Id. at Paragraph 37.) American Roll alleges that after the

sample parts had been approved and American Roll was ready to run production orders, Chamberlain informed American Roll that it would have to produce the American Roll designed straight arm at the same cost as the Chamberlain facility. (Id. at Paragraph 28.) On January 15, 2014, American Roll was informed by Chamberlain that a final decision was made not to place any future orders for the American Roll designed straight arm or curved arm parts. (Id. at Paragraph 39.) American Roll alleges that Chamberlain continues to produce the American Roll designed straight arm part for its garage door lift product line, receiving considerable benefit but not compensating American Roll. (Id. at Paragraph 40.)

American Roll filed its Complaint in this case on October 17, 2014, alleging Unfair Trade Practices under 15 U.S.C. § 1125(a); Deceptive Trade Practices under Ohio Rev. Code § 4165.02 et seq.; and, common law claims for promissory estoppel; quantum meruit/unjust enrichment; fraud; and, unfair trade practices. Jurisdiction is premised on diversity of citizenship. On November 19, 2014, Defendants filed their Motion to Dismiss. (Docket #7.) American Roll filed a Memorandum in Opposition on January 5, 2015. (Docket #15.) Defendants filed a Reply Brief on January 20, 2015. (Docket #18.)

## DISCUSSION

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept

conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). It is with this standard in mind that the instant Motion must be decided.

I. **American Roll's First, Second and Sixth Claims for Relief under the Lanham Act; the Ohio Deceptive Trade Practices Act; and, Ohio Common Law for Unfair Trade Practices.**

A. **Lanham Act.**

In its First Claim, American Roll alleges that Defendants have committed, and continue to commit, unfair competition by intentionally and willfully copying and misappropriating the

American Roll designed straight arm, causing great loss and irreparable harm to American Roll, in violation of the Lanham Act, 15 U.S.C. § 1125. American Roll asserts that it has suffered and will continue to suffer substantial harm, including but not limited to the loss of sales and profits which American Roll would have made but for the acts of unfair competition by Defendants.

15 U.S.C. § 1125, entitled "False designations of origin, false descriptions, and dilution forbidden" provides, in part, as follows:

(a) Civil action.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce and word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading descriptions of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prevail on a claim for the infringement of a product-design trade dress, a plaintiff must prove that its allegedly infringed product design (1) is nonfunctional, (2) has acquired secondary meaning, and (3) is confusingly similar to the allegedly infringing product design. *GMC v. Lanard Toys, Inc.*, 468 F.3d 405, 414 (6th Cir. Mich. 2006). "Whereas nonfunctionality and secondary meaning are required to show protectability—that is, that the plaintiff's trade dress is capable of Lanham Act protection in the first place—likelihood of confusion is required to show

that the trade dress has in fact been infringed by the defendant." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 504 (6th Cir. Ohio 2013) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. Ohio 2002)).

The Parties disagree as to whether the design of the parts is functional. However, regardless of whether the product design of the American Roll straight and curved arm parts is functional, there are no allegations in the complaint whatsoever that the design has acquired secondary meaning or that Defendants' use of the design is likely to cause confusion among consumers.

"Secondary meaning," also referred to by the Sixth Circuit as acquired meaning, indicates that "'in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.'" *Groeneveld*, 730 F.3d at 504 (6th Cir. Ohio 2013) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11). "Confusingly similar," also referred to as the likelihood of confusion, indicates that "an ordinary consumer would confuse the products at issue, which in fact come from different sources, as emanating from a single source or from associated sources." *Groeneveld*, 730 F.3d at 504 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. Ohio 1997)). The "'general concept underlying the likelihood of confusion is that the public believe that the mark or dress owner sponsored or otherwise approved the use of the trademark or trade dress.'" *Groeneveld*, 730 F.3d at 504 (citing *Abercrombie*, 280 F.3d at 645).

The Complaint is devoid of any allegation that the straight and curved arm parts have acquired a secondary meaning which identifies American Roll to the public as the manufacturer, nor is there any allegation that the public is likely to be confused as to the origin of the straight

and curved arm parts. In this case, American Roll alleges that Chamberlain wrongfully copied and wrongfully continues to produce parts which American Roll designed and produced at the request of Chamberlain at a significant cost. The controversy in this case arise out of the business relationship between American Roll and Chamberlain and there are no allegations in the Complaint, for example, that the public has or may purchase from Chamberlain because of a misperception that the parts at issue were manufactured by American Roll or a misperception that American Roll endorses the parts manufactured by Chamberlain. Accordingly, American Roll's claim under the Lanham Act must be dismissed.

### B. Ohio Deceptive Trade Practices Act/Ohio Common Law Unfair Trade Practices.

In its Second Claim, American Roll alleges that Defendants engaged in a deceptive trade practice likely to cause "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "confusion or misunderstanding as to the affiliation, connection or association with, or certification by another;" and, engaged in a deceptive trade practice by representing "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have," in violation of Ohio Rev. Code §§ 4165.02(A)(2), 4165.02(A)(3) and 4165.02(A)(7). In its Sixth Claim, American Roll alleges a common law claim for deceptive trade practices under Ohio law.

Ohio common law trademark infringement claims and Ohio Deceptive Trade Practices Act claims mirror trademark infringement claims brought under the Lanham Act. *Slep-Tone Entm't Coporation v. Karaoke Kandy Store, Inc.*, 517 Fed. Appx. 339, 341 (6th Cir. Ohio 2013) (citing *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th

-8-

Cir. Ohio 1997)). As set forth above, American Roll pleads no facts regarding likelihood of confusion or secondary meaning. Accordingly, American Roll's Second and Sixth Claims must also be dismissed.

## II. American Roll's Third, Fourth and Fifth Claims for Promissory Estoppel; Quantum Meruit/Unjust Enrichment; and, Fraud.

Defendants argue that American Roll's common law claims for promissory estoppel; quantum meruit/unjust enrichment; and, fraud – Claims Four, Five and Six – should be dismissed because they are preempted by the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1333.67 and because American Roll has failed to state claims upon which relief can be granted.

The Ohio UTSA, with limited exceptions "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67. Such displacement applies to "all claims based on misappropriation of information even if that information does not rise to the level of a 'trade secret.'" *Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012). "Where the common-law claim possesses an independent factual basis separate from the factual allegations establishing a UTSA claim, then the portion of the claim supported by an independent factual basis survives preemption." *Int'l Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 635 (S.D. Ohio 2012) (internal quotations omitted).

As explained above, American Roll has failed to sufficiently state claims under the Lanham Act or under Ohio statutory or common law for deceptive trade practices. However, the Complaint sets forth sufficient facts to render American Roll's common law promissory estoppel; quantum meruit/unjust enrichment; and, fraud claims plausible, separate and distinct from American Roll's trade dress claims and beyond misappropriation of confidential

information. Accordingly, Defendants' Motion to Dismiss is denied as to American Roll's Fourth, Fifth and Sixth Claims.

### III. Defendant Duchossois.

Defendants argue that American Roll failed to adequately articulate any claims against Duchossois and, therefore, that the Complaint against Duchossois should be dismissed, as the Complaint states only that Duchossois owns Chamberlain, operates various businesses, and has a mission statement that ARF's president photographed. (Complaint at ¶¶ 3, 9 and 33.) Further, Defendants move the Court to dismiss the Complaint against Duchossois for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Specifically, Duchossois argues that the Complaint does not allege that Duchossois, a foreign corporation, has sufficient minimum contacts with Ohio to establish personal jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

American Roll failed to include any opposition to the arguments raised by Duchossois regarding the sufficiency of the Complaint as it pertains to Duchossois or personal jurisdiction. The Sixth Circuit has recognized that where the "plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Humphrey v. United States Attorney General's Office*, 279 Fed. Appx. 328 (6th Cir. Ohio 2008) (citing *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470 (6th Cir. Tenn. 1989)). Accordingly, American Roll's claims against Duchossois are hereby dismissed.

## CONCLUSION

The Motion to Dismiss filed by Defendants (Docket #7) is hereby GRANTED IN PART, as follows.

American Roll's Claims against Defendant Duchossois are hereby DISMISSED.

American Roll's First, Second and Sixth Claims are hereby DISMISSED.

Defendants' Motion to Dismiss is hereby DENIED as to American Roll's Third, Fourth and Fifth Claims against Defendant Chamberlain.

Defendants' Request for attorney fees and costs is hereby DENIED.

The Parties shall proceed with discovery. A status conference remains set for July 13, 2015 at 9:00 a.m.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
United States District Judge

DATED: February 27, 2015